JS - 6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANNIFER WILLIAMS, | ) |
| Plaintiff, | ) NO.  ED CV12-00748-JLQ |
| v. | ) MEMORANDUM OPINION AND |
| | ) ORDER GRANTING IN PART |
| | ) MOTIONS TO DISMISS, |
| U.S. BANK NATIONAL ASSOC., | ) DECLINING SUPPLEMENTAL |
| et al., | ) JURISDICTION, AND CLOSING FILE |
| Defendants. | ) |
| _____ | ) |

**I.  Introduction and Background**

Plaintiff's First Amended Complaint (herein "FAC") asserts three federal claims and twelve claims based on state law.  The court has already determined that two of the federal claims, the Truth In Lending Act and Fair Debt Collection Practices Act claims, are barred by the applicable statute of limitations.  See Order of January 16, 2013 (ECF No. 107).  The sole remaining federal claim is Count Five alleging violation of the Servicemembers Civil Relief Act, 50 U.S.C. App. § 501 *et seq.* (herein "SCRA").   The SCRA claim is asserted against four of the nine Defendants: U.S. Bank, Law Offices of Les Zieve, Les Zieve, and Michael Gonzales.  These four Defendants, in two separately filed Motions, have moved to dismiss the SCRA claim.  The court heard argument on all five pending Motions to Dismiss on December 3, 2012, and received supplemental briefing from Plaintiff and U.S. Bank on December 20, 2012.

**II.  Discussion**

The court begins its analysis with the SCRA claim, as resolution of that sole

ORDER – 1

remaining federal claim may be dispositive.  The following facts are as set forth in Plaintiff's pleadings.  Plaintiff joined the United States Marine Corps in July 1981. On January 22, 2007, Plaintiff, while serving on active duty in the Marine Corps as an enlisted career person, obtained two loans from GE Money Bank totaling $329,999.00 for the purchase of real property. (FAC ¶ 43-44; Complaint ¶ 16-17). By the summer of 2009, Plaintiff was in default on the loans, and by August 2009 was $11,089.50 in arrears. (Complaint ¶ 20).  Defendant U.S. Bank began non-judicial foreclosure proceedings, and a non-judicial foreclosure sale was held on January 5, 2010.  (FAC ¶ 77).  Plaintiff was serving overseas on Okinawa at the time and did not receive the Notice of Default or Notice of Trustee's Sale (FAC ¶ 40).

On February 22, 2010, Defendants Law Offices, Les Zieve, and Michael Gonzales filed a verified complaint in state court for unlawful detainer. (FAC ¶ 105).  Plaintiff received notice of the unlawful detainer action in March 2010. Plaintiff alleges that Law Offices of Les Zieve, Les Zieve, and Michael Gonzales "executed or caused to be executed sworn declarations, signed under penalty of perjury, declaring that Plaintiff was not on active military duty at the time they filed a default judgment." (FAC ¶ 13).  U.S. Bank obtained a Judgment for Possession in the state court action on March 29, 2010.

Plaintiff was discharged and retired from the military on July 31, 2011. (ECF No. 104, p. 3).  In February 2012, the Judgment of Unlawful Detainer was set aside in state court. (Complaint ¶ 53).

**A.  Servicemembers Civil Relief Act**

Plaintiff's Fifth cause of action alleges violation of the SCRA. (ECF No. 49, ¶¶ 173 - 185).  Plaintiff alleges that Law Offices of Les Zieve, Les Zieve, and/or Michael Gonzales executed sworn declarations in state court asserting that Plaintiff was not on active military duty in order to obtain the unlawful detainer default judgment, even though they knew such declaration was false. (ECF No. 49, ¶ 177).

ORDER – 2

Plaintiff further alleges that these Defendants failed to serve her with state court documents related to the unlawful detainer proceeding. (¶ 178).  Plaintiff alleges that these Defendants violated the Serviceman's statute by executing the false declarations and failing to inform the state court that Plaintiff was on active military duty.  Plaintiff alleges a violation of Section 521 of the SCRA.  Section 521, enacted to provide servicemembers protection from default judgments being entered against them while they are serving abroad, requires that the opposing litigant file an affidavit stating whether or not the defendant is in military service. § 521(b)(1).  Section 521(c) further provides that one who makes such an affidavit, knowing it to be false, is subject to fine or imprisonment pursuant to Title 18, U.S.C.

Plaintiff seeks civil monetary relief against these Defendants, while the statute provides relief in the form of fines and/or imprisonment.  Therefore, Plaintiff relies on Section 597a as creating a private right of action to allow her to pursue a civil claim for violation of Section 521.  Section 597a provides that "any person aggrieved by a violation of this Act may in a civil action - (1) obtain any appropriate equitable or declaratory relief with respect to the violation; and (2) recover all other appropriate relief, including monetary damages."  Defendants argue that Plaintiff's claim for relief under the SCRA is barred by California's absolute litigation privilege. (ECF No. 73, p. 5).

### B. Litigation Privilege

California recognizes a broad, or sometimes called "absolute" privilege for communications made during the course of judicial proceedings.  The privilege is codified in California Civil Code section 47 and derives from common law principles. *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057 (Cal. 2006).  The California Supreme Court has held that while originally applied to defamation, the privilege now applies to "all torts except malicious prosecution." *Id.*  The privilege applies "to any communication (1) made in a judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

ORDER – 3

litigation; and (4) that have some connection or logical relation to the action." *Id.*

In *Rusheen*, the California Supreme Court held that "the communicative act of filing an allegedly false declaration of service of process fell within the litigation privilege." *Id.* at 1058.  In *Rusheen*, the false declaration of service was used to obtain a default judgment and then post-judgment enforcement actions were taken, including applying for a writ of execution and levying on property.  The California Supreme Court found that the privilege extended to noncommunicative actions that were necessarily related to the false declaration: "because the claim for abuse of process was based on the communicative act of filing allegedly false declarations of service to obtain a default judgment, the postjudgment enforcement efforts, including the application for writ of execution and act of levying on the property, were protected by the privilege." *Id.* at 1052.

The allegations in this case are quite similar - - that Defendants executed a false state court declaration in order to obtain a default judgment in the unlawful detainer action.  Defendants' conduct falls squarely within the litigation privilege. The declarations were (1) filed in a judicial proceeding, (2) by litigants or their attorneys, (3) to achieve the objects of litigation, and (4) were logically related to the action.  Plaintiff alleges that the declarations were submitted "to obtain a default judgment against plaintiff". (FAC ¶ 177).  The declaration was logically related to the action and intended to achieve the object of litigation.

The fact that the declaration filed by Defendants constituted perjury, according to Plaintiff's allegations, does not preclude application of the privilege. See <u>Jacob B. v. County of Shasta</u>, 40 Cal.4th 948, 958 (Cal. 2007)("Obviously, perjury is not permitted by law.  But the cases are clear that the litigation privilege extends to civil actions based on perjury.").   Stated even more definitively: "Obviously, the law does not permit false declarations, but declarations of service to obtain a default judgment are a category of publication permitted by law.  Hence, the litigation privilege protects all such declarations." *Id.* at 959.  This does not

ORDER – 4

mean that someone aggrieved by the use of a perjurious affidavit has no remedy.  As noted by the California Supreme Court in *Rasheen*, a party may move to set aside the default judgment (as was successfully done here) and "the litigation privilege does not bar criminal prosecutions for perjury." 37 Cal.4th at 1064-65.

Plaintiff's argument appears to be, while citing no supporting case law, that her SCRA claim is based on federal law, and thus California's absolute litigation privilege cannot bar her claim because of the Supremacy Clause. (ECF No. 83, p. 18).  California's litigation privilege is "routinely applied in federal court." *Anderson v. Gibson, Dunn, & Crutcher*, 985 F.2d 571 (9th Cir. 1993).  In *Anderson*, the Ninth Circuit found the litigation privilege barred four state law claims.  The California Supreme Court has found the litigation privilege to bar even claims based on the California constitution. See *Jacob B. v. County of Shasta*, 40 Cal.4th 948, 961 (Cal. 2007)("We conclude that the litigation privilege applies even to a constitutionally based privacy cause of action.").

Plaintiff claims that if she had a clearly expressed federal statutory right to pursue a claim for civil damages based on the filing of a false declaration, by an attorney, in pursuit of the objective of the lawsuit, then such claim could not be precluded by California state law.  However, if she has no such right, then there is no conflict between state and federal law.  Whether she has such right, is discussed *infra*.

### C. <u>Retroactive Application of Section 597a of the SCRA</u>

Plaintiff, at oral argument and in her Supplemental Brief (ECF No. 104), argued that she is entitled, pursuant to SCRA §597a, to pursue a private right of action for a violation of any section of the SCRA, and that Defendants violated § 521 by filing a false affidavit in the state court unlawful detainer action.  The difficulty with this argument is that § 597a was not enacted until October 13, 2010, well after the alleged false affidavit was filed in state court.  See *Gordon v. Pete's Auto Service*, 637 F.3d 454, 457 (4th Cir. 2011).  In this action, the foreclosure sale

ORDER – 5

took place on January 5, 2010, and the unlawful detainer action occurred in the months thereafter.  It is during February and March of 2010 that Defendants allegedly executed the false affidavit(s) as to the Plaintiff's military status in the state court unlawful detainer action.   Therefore, Section 597a was not enacted at the time of the alleged violation of Section 521.  The Fourth Circuit, in *Gordon*, found that retroactive application of Section 597a to the facts before it was permissible, but it appears that no other Circuit has addressed the issue.

In *Gordon*, the Fourth Circuit found that Section 597a did not show that Congress intended to make the law apply retroactively, rather the statue was silent on the question.  *Id*. at 459.  The court then assessed whether applying 597a in the case before it would have retroactive effect: "A statute does not have retroactive effect merely because it is applied in a case arising from conduct antedating the statute's enactment." *Id*.  Rather, the inquiry is whether the statute "attaches new legal consequences to events completed before its enactment." *Id.*  The Fourth Circuit found that before enactment of 597a, a plaintiff could already assert his right of non-foreclosure in a Virginia state law action for the tort of conversion.  *Id.*

By contrast, in the case at bar, prior to the enactment of Section 597a, Section 521 did not contain an express private right of action for civil enforcement.  Rather, Section 521 provided that one who knowingly made a false affidavit was subject to fines and/or imprisonment.  Plaintiff did not have a right to pursue civil damages under California state law for the filing of the false affidavit because of the absolute litigation privilege as discussed *supra*.  Accordingly, at the time the false affidavit was made in February or March 2010, Plaintiff had no right to civil relief under California law or § 521.  Allowing Plaintiff to rely on Section 597a would therefore have retroactive effect by increasing a party's liability for past conduct.  "If the new statute would operate retroactively, then the statute must be construed not to apply to pre-enactment conduct unless, in the third step of the analysis, there is clear congressional intent favoring such a result." *Gordon*, 637 F.3d at 458 (4th Cir. 2011).

ORDER – 6

The Fourth Circuit found no clear expression of Congressional intent. *Id.* at 459 ("We thus conclude that Congress has neither expressly included nor excluded preenactment conduct from the reach of this statute.").

This court finds that allowing Plaintiff to pursue a claim for violation of Section 521, which allegedly occurred in February or March of 2010, based on a private right of action created by Section 597a, which was not enacted until October 2010, would have retroactive effect, and that Congress has not clearly allowed for such retroactive application. Accordingly, Plaintiff does not state a claim for relief under Section 521 or 597a.

### D. Does Plaintiff State a Claim Under Section 533 of the SCRA?

Plaintiff's original Complaint pled no provision of the SCRA that was allegedly violated. The First Amended Complaint claims a violation of Section 521 for filing a false declaration. There has been discussion in the briefing and at prior hearings, as to whether Plaintiff has a claim under Section 533. It is unclear as to whether Plaintiff has abandoned that claim, in favor of Section 521. To the extent Plaintiff has not abandoned a claim based on Section 533, the court finds she fails to state a claim for violation of Section 533 because the commencement of her military service pre-dated the loan at issue.

Plaintiff alleges that she joined the United States Marines in July 1981. (FAC, ¶ 38). She entered into the home loan at issue in this case in January 2007 while active duty. She allegedly was deployed overseas on active military duty from April 2007 until July 2011. (FAC, ¶ 39). Defendants foreclosed on Plaintiff's home in January 2010. (FAC ¶ 40), when the Plaintiff was admittedly in default.

Defendants Ocwen, US Bank, and MERS argue in their Motion to Dismiss (ECF No. 74-1) that Plaintiff fails to state a claim under the SCRA because her loan obligation originated **after** she began her military service. It is undisputed and clear from the face of the FAC that the loan originated in January 2007, long after her military service began in July 1981. The SCRA provides at 50 App.U.S.C. § 533:

ORDER – 7

§ 533.  Mortgages and Trust Deeds
(A) Mortgage as security
    This section **applies only** to an obligation on real or personal property owned by a service member that–
    (1) originated **before** the period of the servicemember's military service and for which the servicemember is still obligated; and
    (2) is secured by a mortgage, trust deed, or other security in the nature of a mortgage.  (emphasis added).

It is clear from the plain terms of the statute that it applies only to mortgage loan obligations that originated <u>before</u> military service began.  Plaintiff's loan obligation originated <u>during</u> her military service. <u>See also</u> *Coward v. JP Morgan Chase*, 2012 WL 2263359 (E.D. Cal. 2012)("Plaintiff also alleges that she entered into the loan during the period of her husband's military service...However, the SCRA only applies to contracts entered into before military service.") <u>citing</u> *Whigham v. Chase Auto Fin.*, 826 F.Supp.2d 914 (E.D. Va. 2011) and 50 U.S.C.App. § 533(a).

    Plaintiff fails to state a claim for relief based on Section 533 of the SCRA.

**E.  Supplemental Jurisdiction**

    Under 28 U.S.C. § 1367(c)(3) this court may decline to exercise supplemental jurisdiction over state law claims if it has "dismissed all claims over which it has original jurisdiction."  The Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), stated that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right."  Ordinarily, where the federal claims are dismissed prior to trial, "the state law claims should be dismissed as well." *Id.* Plaintiff asserts twelve state law claims, which are more appropriately decided in state court.  As the Supreme Court stated: "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties". *Id.* The court has considered the course of litigation in this court, and recognizes that the case has been pending for approximately nine months and that the parties have engaged in extensive motion practice and may have conducted considerable discovery.  The discovery and prior briefing should be useful in expediting the state

ORDER – 8

court proceedings, or perhaps may be utilized in reaching settlement of the parties' dispute.

This court declines to retain jurisdiction over the remaining state law claims, and this action will be dismissed in its entirety. The pendency of this action shall not prejudice Plaintiff in timely asserting her claims in state court, because the statute of limitations as to her state law claims asserted herein is considered tolled while this action is pending. <u>See</u> 28 U.S.C. § 1367(d)("...shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period); *Kendrick v. City of Eureka*, 82 Cal.App.4th 364 (Cal.App. 2000).

### III.  Conclusion

This court has previously ruled that Plaintiff's TILA and FDCPA claims are barred by the applicable statutes of limitation. <u>See</u> Order of January 16, 2013 (ECF No. 107). The court has now determined that Plaintiff's SCRA claims, asserted against U.S. Bank, Law Office of Les Zieve, Les Zieve, and Michael Gonzales, fail to state a claim. Accordingly, all of the federal claims are hereby dismissed with prejudice. The court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3).

**IT IS HEREBY ORDERED**:

1. Defendant Old Republic Default Management Services Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 68) is **GRANTED IN PART**. Count III alleging violation of the FDCPA against Old Republic is **dismissed with prejudice**. The TILA and SCRA claims were not asserted against Old Republic. The court declines to exercise supplemental jurisdiction over the remaining state law claims and they are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

2. Defendants' Michael Gonzales, Les Zieve, and the Law Offices of Les Zieve Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 73) is **GRANTED IN PART**. Count III alleging violation of the FDCPA is **dismissed**

ORDER – 9

**with prejudice**. The TILA claim was not asserted against these Defendants. The SCRA claim in Count V is **dismissed with prejudice**. The court declines to exercise supplemental jurisdiction over the remaining state law claims and they are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

3. Defendants U.S. Bank, Ocwen, and MERS Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 74) is **GRANTED IN PART.** Counts III, IV, and V are **dismissed with prejudice**. The court declines to exercise supplemental jurisdiction over the remaining state law claims and they are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

4. Defendant Saxon Mortgage's Motion to Dismiss (ECF No. 75) is **GRANTED IN PART**. None of the federal claims were asserted against Saxon Mortgage. The court declines to exercise supplemental jurisdiction over the state law claims asserted against Saxon Mortgage and they are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

5. Defendant GE Money Bank's Motion to Dismiss (ECF No. 81) is **GRANTED IN PART**. Count IV, alleging that GE Money Bank violated the TILA, is **dismissed with prejudice**. The FDCPA and SCRA claims were not asserted against GE Money Bank. The court declines to exercise supplemental jurisdiction over the remaining state law claims and they are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

6. Defendant U.S. Bank, Ocwen, and MERS Motion to Dissolve or Modify Preliminary Injunction (ECF No. 79) is **GRANTED**. This court previously granted the parties Joint Motion for Temporary Restraining Order and Preliminary Injunction. <u>See</u> Order, ECF No. 24. The Order provided the injunction would remain in effect during the pendency of the case. As the case is being dismissed, the injunction is dissolved.

**IT IS SO ORDERED**. The Clerk shall enter this Order, furnish copies to counsel, and close this file.

ORDER – 10

DATED this 13th day of February, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER – 11